Bbevakd, J.
My opinion is, that the motion ought not to be granted. The case, was, I think, fairly before the jury, for their decision, on the facts disclosed in evidence ; the law was rightly laid down, and the verdict is supported by law and evidence. If it was clear, that the verdict was founded on the principle declared by the foreman, in' all the extent which his declaration seemed to import, it would be clearly founded in error, and ought to be set aside. But there is no evidence to support that declaration. The jury were not sent back with further instructions on the point in question, and desired to reconsider their verdict. The other jurymen- did not corroborate, the statement of their forenoon, otherwise than by their silence. It would be a dangerous practice to overthrow verdicts on account of loose expressions of one, or a few of the jurors, thrown out casually, and without being fully explained and understood at the time of delivering their verdiGt. And, besides, if the particular reasons of each juryman were to be inquired into, and canvassed, on such occasions, very few verdicts, I fear, would stand without exception. To allow inquiries to be made, of individual jurors, at the time of rendering the verdict, unless under very peculiar circumstances, and with the consent and direction of the court, would be exceedingly inconvenient, and mischievous, and ought not to be indulged. On the present occasion, I am not disposed to give any effect to the extra-official declaration of the foreman, and, therefore, lay it entirely out of the question.
The testimony of Edmondston, to prove that Patrick Mair, by his own confession, was largely indebted to the defendants, in my opinion, was properly admitted for that purpose ; and for any other purpose, according to my view of the case, it was irrelevant and *131 immaterial; and, therefore, although it may have been given con. trary, in some respects, to the rules of evidence, it cannot make any difference in the case.
It is quite immaterial, in my judgment, on what account Patrick Mair became indebted to the defendants, and how the monies he received from them were applied, provided the same were fairly advanced by them, and there was no collusion, or fraud practised, or intended by them, in the transaction. All these points were matters of fact, proper for the consideration and decision of the jury ; and I can perceive no sufficient reason for supposing their deter, mination to be incorrect.
The testimony of Duffus was, I think, properly rejected. • It was offered in order to prove, that, from impressions on his mind, and from the best of his recollection and belief, Patrick Mair, after the dissolution of the partnership, was always in funds for paying the partnership debts, as appeared to him from the partnership books, when he examined them, under the direction of the Court of Equity, in a suit therein depending between David Lamb and Patrick Mair. The books, themselves, were better evidence than the testimony of any witness, as to their contents. But these books would have been irrelevant and incompetent evidence, to affect the defendants, who cannot be interested or concerned in the question between Patrick Mair and David Lamb, which may be indebted to the other, if they are entitled to stand upon the ground they have assumed for their defence, namely, that they purchased fairly from Patrick Mair, as 'principal, and without any knowledge of the property being copartnership property, and which Patrick Mair was not authorized to sell as principal, or as factor.
It was immaterial in what manner Patrick Mair became indebted to the defendants, or for what purpose, or upon what consideration ; whether it was to raise money to discharge partnership debts, or to accommodate Lynn and Weyman, if the fact was clear, that he was, in truth, indebted to them when he sold the sugars to them, and they discounted with him the debt he owed them, in payment for the sugars, under the impression that the sugars were his own property, or that he had an absolute power over them, either as principal, or as factor. If he had power to sell, and receive the money, I can see no good reason why he could not sell to the defendants, and discount the price in payment of his own debt. The judge, in his charge to the jury, laid down the law as favorably as it could be done, with propriety, for the plaintiffs. It has been said that the defendants well knew, at the time the sugars were pur *132 chased by them, that Patrick Mair was the agent of the concern after the partnership was dissolved, and that it is to be presumed they also knew that the sugars were partnership property. Ad-they did know of Patrick Mair’s agency, it will not necessarily follow that they must have known the property in question was not his own, and that he was not empowered to dispose thereof as his own.
It appears to me that the circumstances of the case authorize a direct contrary inference. He had authority to wind up the partnership concerns. How could he do so without selling these sugars ? A power to sell implies, necessarily, a power to receive the proceeds of sale, unless restrained by the special terms of the agency. One half of the property belonged to Patrick Mair, in common with his co-partner. This half he had a right to sell without control. The other half he was authorized to sell as agent, or factor. Can it be said that Saltus & Yates were not at liberty to buy the sugars from him, and pay him the whole price in money ? If they could do this, and thereby acquire a good title to be property, where could be the objection to their settling the price with him, by discount, for a debt he owed them ?
There was strong evidence to induce the jury to believe that Patrick Mair sold the sugars as his own property, although they were marked P. M. & Co. They were entered in the books of the custom house as Patrick Mair’s. The bill of parcels was in his name only, and they were sold as his sole property, and placed to his individual credit. The defendants were not bound to know what entry was made respecting them in the books of Patrick Mair & Co., nor did it appear they did know any thing of that circumstance. There is every reason to believe that Patrick Mair was fully authorized to do with this property whatever he might think best. Part was sold at vendue soon after the arrival thereof from Havana; and some time afterwards, when Patrick Mair complained of the want of funds to pay the partnership debts, Mr. Lamb asked him why he did not sell the sugars. There can bé no doubt as to the law : the facts only were doubtful, and those doubts the jury have resolved. It is not pretended, at least by me, that after the dissolution of the partnership, one partner might make an actual division of the specific effects of the partnership, or change the possession by his own act: or that he might endorse bills of exchange in the' name of the- partnership; or in any manner bind his co-partner by any act not within the scope of his authority, as agent. After the dissolution of the partnership, the partners were *133 'distinct persons, and the' partnership effects remaining on hand belonged to them jointly, as tenants in common. To dispose thereof effectually, it was necessary that they should both join in the sale, except as to the disposal of undivided moiety of each in the joint property. If, however, one partner did constitute the other his agent, and empower him to wind up the partnership concerns, that agent was undoubtedly authorized to sell the merchandize on hand, unless specially restrained from doing so. In so doing, he does •not sell as partner, but as agent, or factor, in so far as respects the undivided share or property of his co-partner. The power given to Patrick Mail’, to wind up the business of the partnership, did •not fully appear; but there can be no doubt of his being authorized to sell those sugars, since it was proved that Mr. Lamb said to him, -,£ why do you not sell the sugars ?”
The chief question of any difficulty, appears to me to be, that ■which I mentioned to the counsel on the argument, but which did not seem to be so considered by one of my learned brothers, (Nott, J.,) who expressed himself to be perfectly satisfied on that point, ■and did not wish to hear it argued ; I mean the question, whether the defendants did, or did not know, that Patrick Mail-, when he bargained with them about the sugars, and allowed them to dismount the debt he owed them, in payment for the same, was not •authorized by his co-partner to do so, and that the sugars were known to be partnership property.
The cases in which factors have sold goods under del credere commissions, as their own, are strictly analogous to the present case. Del credere is an Italian mercantile phrase, signifying a particular credit, when the factor takes the risk of bad debts. Tn this case the agent ran the hazard of the debt being bad, as he was as much interested as his partner; and moreover his partner had given him the power of selling according to his own discretion, in order to wind up the business of the partnership. And I can see no difference between borrowing money to pay partnership debts, on the credit of the agent, and then selling partnership stock to refund the same., and selling partnership stock in the first instance, and paying the debts of the partnership therewith. Nor can I see why the sale should not be good, whether the monies thence arising were applied honestly in discharging partnership debts, or laid out in any other way, however improperly. The purchaser has no control over the money after it is paid away. If the money be advanced before the sale, it is the same as if it were paid afterwards, and discount is equivalent to payment. In Rabone v. Williams, and *134 George v. Clagget, the buyer knew nothing of the principal when he bargained with the factor. He had, therefore, a right to consider the factor as principal, and set off any claim he had against the factor. 7 D. and E. 359. 2 Esp. Rep. 557. 2 Str. 1182.
So in Stacey, Ross, and others, v. Day, where it appeared that Ross was the only ostensible person engaged in the business, and appeared to the world as solely interested therein. This led to the belief, that he was the only person to be contracted with ; and, therefore, the plaintiffs were allowed to set off the sole debt of Ross. 7 D. and E. 361. 1 Com. on Contr. 307.
If the factor, at the time of the sale, agree to set off a debt of his own, due to the vendee, it is binding upon the principal, and considered the same as if the factor received so much money from the vendee. 1 Com. on Contr. 243. 2 Str. 1182. Cowp. 255. Bull. N. P. 130. Willes. 400. In the present case Patrick Mair was answerable to his partner for his part of the price for which the sugars sold, and it seems he debited himself therewith in the partnership books. He could not bind his principal by his acts, but he could use his money, or dispose of the effects, if authorized so to do : one being within the limits of his authority, the other not. He cannot exceed his authority ; here he did n.ot do so, at most he only abused it.
The second ground stated in the brief for a new trial, imputes inconsistency in the charge of the judge, in this, that he thus laid down the law: That a partner, after the dissolution of the part-ner3hip, cannot borrow money even for discharging partnership debts, nor apply the partnership funds in payment of his own private debts ; and yet, inconsistently therewith, left it to the jury to decide, whether the defendants knew, at the time of receiving the sugars, that the same was partnership property ; suggesting, that if the jury were satisfied that the defendant believed the same was the sole property of Patrick Mair, the discount would be good. Now, I think this charge was both consistent and correct. A partner is not authorized to borrow on the credit of the partnership ; but if he does borrow money on account of the partnership, or otherwise, he is himself bound to refund. He is not authorized to apply the partnership funds in payment of his own private debts; yet if he has money of the partnership in his hands, -and pays it over in discharge of his private debts, I cannot perceive how the same can be reclaimed by his. co-partner. If he be authorized by his co-partner, to sell the remaining stock on hand, and he sells as principal, or as factor ; if he deals with the purchaser as principal, *135 and the purchaser has no knowledge of the property being partnership property, he will certainly be entitled to set off the debt of the vendor in payment. But if instead of paying money, the buyer offers to discount his own debt, I cannot see why the buyer should not be permitted lawfully to accept the offer, and gain a legal title to the property, any more than if he were first to pay the money, and then receive it back in payment of his debt.'
Nothing decisive can be deduced from the circumstance of Patrick Mair’s afterwards becoming a partner of Saltus & Yates, and cashier of that concern. It was a circumstance proper for the consideration of the jury, and the jury did, no doubt, consider the same, and probably gave it all the weight it deserved.
The evidence of Patrick Mair’s being indebted to Saltus & Yates, is complained of as insufficient, yet it was the confession of a man against his own interest, and, if worthy of credit, went to prove that he owed more than the proceeds of the sugars. If the jury gave credit to the evidence, it was entirely sufficient; and I cannot pretend to say the evidence was not entitled to credit.
The discount law is out of the case. It is not a question of discount, or set off. The payment for the sugars was prompt, by discharging the private debt of Patrick Mair. The consideration of the bargain was an immediate discount, which was executed. Was Patrick Mair authorized to make the discount ? In my opinion he was. Therefore I am against the motion.
Smith, and Nott, Js., in favor of a new trial. BRevard, and Coicock, Js., contra.
The court being divided, new trial refused.